IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTONIO JOE MAES,

    Plaintiff,

v.     CIV 12-0989 RB/KBM

MANNY GALLEGOS, DAVID CASANOVA,
and DIVINE ALCANZO,[1]

    Defendants.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on: the *Martinez* Report of Defendant Corporal Officer Manny Gallegos; Plaintiff's tendered amended complaint that reiterates his claim of excessive force in more detail and names Detention Administrator David Casanova and Officer Divine Alcanzo as additional defendants; and Defendants' answer to the amended complaint filed by the attorney who represents all of them.  *See Docs. 1, 8, 9, 11, 12.*  For the reasons below, the Court recommends that summary judgment enter in favor of Defendants and that this action be dismissed with prejudice.

## I.  Factual & Procedural Background

The Roosevelt County Detention Center housed Plaintiff briefly "as a hold for Curry County [Detention Center]."  Doc. 9 at 2 ("*Martinez Report*").  He arrived at the facility at "19:13" on August 9, 2012, and left at "11:12" on August 15, 2012.  *See Doc. 9-3* at 1; *Doc. 9-4* at 1.  Plaintiff had three altercations with three different officers during that time.  The first two were not involved with the cell extraction which occurred on the

---

[1] Spelling according to *Martinez* Report and affidavit.  *See, e.g., Doc. 9* at 2; *Doc. 9-14* at 1.

morning of August 15, 2012 that is the sole subject of this suit.  *See Docs. 1, 11.* Because Plaintiff was transferred to Curry County Detention Center right after the extraction, he filed suit from there.  *See Doc. 1* at 6, 7.  He did not file a separate response to Defendant's *Martinez* Report, but his original and amended complaint are properly "verified" and thus treated as affidavits for this purpose because they conclude with declarations "under penalty of perjury" that the "information . . . is true and correct" pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621.  *See, e.g., Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997); *Hall v. Bellmon,* 935 F. 2d 1106, 1111 (10th Cir. 1991); *Auguston v. Holder,* 728 F. Supp. 2d 1279, n.7 (D.N.M. 2010); *see also Doc. 8* at 2-3 (Court order setting briefing schedule that explains *Martinez* Report procedures).

   Plaintiff does not dispute the first two altercations, one of which also involved pepper spray.[2]  Plaintiff's original and amended complaints only discuss the extraction, and Plaintiff considers the use of pepper spray during this event to have been excessive.  The events surrounding the extraction are documented by video recordings, which Plaintiff urged the Court to review.  *See Doc. 11* at 3.  It has.  The *Martinez* Report includes three video recordings – one from a stationary security camera in "Dayroom 7," which shows the hallway area outside Plaintiff's cell, *see Doc. 10* (Exh. A-4); one from a stationary security camera in the "Booking Area," that shows the hallway and door of the cell where Plaintiff was taken after the extraction, *id.* (Exh. A-5); and one

---

[2] On August 10, 2012, Plaintiff and his cousin were in the bath area.  They complained when a corrections officer ordered them to finish and return to their bunks for a head count, and initially refused to comply.  The officer provided Plaintiff with a grievance form.  *See Doc. 9-6.*  On August 13, 2012, the officers decided to conduct a "shake down" of a dayroom area and, among other things, ordered the inmates to face a wall and not move or talk.  Plaintiff was among them and disobeyed by turning around, talking and humming, despite orders to desist.  An officer shot a pepper spray ball at the wall above his head to gain compliance, which succeeded, and allowed Plaintiff to wash his face and return to the wall.  The shakedown concluded without further interruptions, and Plaintiff was issued a disciplinary infraction.  *See Doc. 9-7.*

from the hand-held camera used during the extraction to document what transpired, *id.* (Exh. A-3) ("Extraction Video").

At approximately 8:30 a.m. on the morning in question, Officer K. Richerson[3] reported to Defendant Casanova that Plaintiff was

> making threats towards the Roosevelt County Detention Center as well as towards Detention Personnel. The threats consisted of . . . causing harm towards anyone who was to enter his cell or housing unit along with threatening to throw urine and feces on anyone.
>
> After receiving this information [Defendant Casanova] asked Officer Richerson to check on [Plaintiff] and if possible to obtain any information as to why he was issuing such threats. Officer Richerson returned shortly after her assignment and informed me that he was using his mattress as a shield by placing in (sic) around his body in effort to protect him and had a towel wrapped around his face as to protect him from a chemical agent (pepper spray). [His] behavior and refusal to comply with several attempts from staff indicated that the threats were serious.

*Doc. 9-3* at 1. Upon learning of Plaintiff's behavior, Defendant Casanova organized an extraction team to remove Plaintiff from his cell and move him to a "holding cell, where he could be better supervised." *Id.* The purpose was to "protect the staff and the overall integrity of the Facility." *Id.*

The doors to the cells have a vertical slit at head to waist level with bars on them. The Dayroom videotape begins at 9:44:51 a.m., and shows a mattress and what appears to be a towel on the floor directly outside Plaintiff's cell. Over the course of the next five minutes or so, Plaintiff shoved or threw other items through the slit and into the hallway, such as toilet paper, a blanket, and clothing. The extraction team arrived at 10:03 a.m. *See Dayroom Video* at 10:03.

---

[3] Officer Richerson operated the video camera that documented the extraction. *See Doc. 9-3* at 1; *Dayroom Video* at 10:03:19 – 10:04:36 a.m. If she wrote an incident report about the threats and extraction, it is not of record. She did not provide a declaration or affidavit for the *Martinez* Report.

A total of nine officers comprised the extraction team which included the three defendants. As the Dayroom and Extraction videos and incident reports show, one officer shot two pepper spray balls through the cell slit, followed immediately with another officer commanding Plaintiff to lay "face down." The officers had some trouble opening the door after the pepper spray round was fired, but did so within 33 seconds. During that time, a very slight mist appeared near head level and above in the hallway, and some of the officers began to cough and sniffle as they waited for the door to open and to enter the cell. *See id.* at 10:03:18 – 10:03:51 a.m.; *Extraction Video* at 0.54 – 1.27.

Plaintiff was face down underneath the bottom bunk. In contrast to the officers, who continued to cough and sniffle throughout removing Plaintiff from the cell, from the time the officers entered the cell until they restrained Plaintiff, he did not appear cough or sniffle at all, and seems to be heard reassuring them that he was "calming down." *See Extraction Video* at 1:31 – 2:10. Moreover, the officers continued to cough and sniffle during the time it took to move Plaintiff to the holding cell and uncuff him. During that time, Plaintiff was complaining or yelling, without any coughing, saying that: he wanted to walk; he was calm and not suicidal or resisting or using force against them, yet they were taking his outer clothing; and they used pepper spray as "excessive force" when he was just "napping" in his cell and compliant. *See id.* at 2:10 – 4:57.

At some points during the extraction and placement in the holding cell events, the videos briefly show some of the officers' faces or Plaintiff's face. None of these scenes show even mild distress, or streaming tears, or swollen eyes, or red skin. The only objective effects from the pepper spray are those experienced by the officers.

Collectively, Plaintiff's original and amended complaints allege that the correctional officers did not follow protocol by first asking him to "cuff up" and instead used pepper spray even though he was already on the floor being compliant when they arrived. He seeks to hold Defendants Gallegos and Casanova liable in their "supervisory capacity," though it is not disputed that they actively participated in the extraction. Plaintiff also claims Defendants denied him medical care by leaving him to sit "for hours" after being sprayed. *See Doc. 1* at 2-4; *Doc. 11* at 2-4.

## II.  PLRA Exhaustion

Defendants first move to dismiss this action for Plaintiff's failure to exhaust administrative remedies before filing suit. "[U]nder the Prison Litigation Reform Act of 1995 ("PLRA") . . . '[i]nmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed.'" *Davis v. Jones,* 390 F. App'x 803, 804 (10th Cir. 2010) (quoting district court opinion). An inmate must fully exhaust the grievance process by "'using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo,* 548 U.S. 81, 90 (2006) (citation omitted) (emphasis original); *see also Hicks v. Jones,* 332 F. App'x 505, 506 (10th Cir. 2009) ("'An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies.'") (quoting *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002)).

If an inmate does not exhaust, the Court has no choice but to dismiss his claims on this basis alone. *See Mitchell v. Figueroa,* 489 F. App'x 258, 260 (10th Cir. 2012) ("the record also indicates that he failed to fully exhaust the remedies available to him.

Thus, the district court was required under the PLRA to dismiss his complaint."); *Davis,* 390 F. App'x at 804 (because prisoner did not exhaust, "we are obliged to conclude the district court was correct to dismiss his suit"). As recently held in this District:

> Plaintiff's allegations, if taken as true, paint a disturbing picture. The Court is very concerned about the circumstances giving rise to this complaint and the serious physical injuries suffered by Plaintiff. However, under the strict terms of the PLRA, the Court may not address the merits of Plaintiff's complaint without first being satisfied that all available administrative remedies were exhausted. This Court has no discretion to excuse noncompliance with prison grievance procedures. *Booth v. Churner,* 532 U.S. 731, 738–41 (2001). Because the Court has found that Plaintiff failed to exhaust all available administrative remedies prior to filing suit, the complaint must be dismissed.

*Rouse v. Baca,* No. CV 11–0433 MV/CG, 2012 WL 4498866, at *7 (D.N.M. Sep. 25, 2012). Dismissals for failure to exhaust are made without prejudice so that the prisoner can exhaust and then return to court with another lawsuit.[4]

On the other hand, the "'burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.'" *Webb v. Jones,* Nos. 12–6250, 12–7070, 12–7071, 2013 WL 2168143, at * 2 (10th Cir. May 21, 2013) (quoting *Roberts v. Barreras,* 484 F.3d 1236, 1241 (10th Cir. 2007)). In addition, the Tenth Circuit has "'obligated district courts to ensure that any defects in exhaustion are not procured from the action or inaction of prison officials.'" *Whitmore v. Jones,* 456 F. App'x 747, 750 (10th Cir. 2012) (quoting *Tuckel v. Grover,* 660 F.3d 1249, 1254 (10th Cir. 2011)).

---

[4] *See Wilson v. Benzona,* 485 F. App'x 976, 978 (10th Cir. 2012) (panel affirmed dismissal "[b]ut because the district court incorrectly dismissed the case with prejudice, we REMAND to the district court so that it may modify its dismissal to be without prejudice for failure to exhaust administrative remedies."); *Mitchell,* 489 F. App'x at 260 ("Because the district court dismissed the complaint without prejudice, Mitchell can refile if and when he actually exhausts his administrative remedies.").

Defendants do not discuss what procedures Plaintiff is required to have exhausted. Depending on whatever policy is applicable here, dismissal for failure to exhaust could effectively constitute a dismissal of that claim with prejudice, if Plaintiff has no remaining procedures available to him to further exhaust before returning to this Court.[5] Furthermore, Plaintiff was placed in the holding cell at 10:05 am., *see Booking Video,* and his paperwork shows that he was "released" from the facility at 11:12 that same day, *see Doc. 9-4,* so he conceivably had time to submit a grievance. He asserts that the grievance he submitted about the extraction, presumably at the Roosevelt County facility, was "thrown away." *See Doc. 1* at 5. The *Martinez* Report does not contradict his assertion, contain any grievance documentation, or include an affidavit from the records custodian explaining efforts to locate grievances. As such, the Court declines to recommend dismissal on exhaustion grounds, and turns to the defense alternative argument on the merits.

## III. Use Of Pepper Spray Did Not Violate Constitutional Standards

Plaintiff's theory of recovery is based on the premise that the officers should have used lesser methods to enforce compliance during the extraction, before resorting to the use of pepper spray. Defendants' use of force policy does call for use of "physical force and restraining in inmate" to be "used as a last alternative after all other reasonable efforts to resolve a situation has failed" and requires the officers to "only use that

---

[5] *C.f., Braxton v. Zavaras,* 614 F.3d 1156, 1161-62 & n.4 (10th Cir. 2010) (Colorado law; even if PLRA exhaustion requirement considered an "extraordinary circumstance," if inmates not diligent while further exhausting and returning to federal court after dismissal, equitable tolling inapplicable); *Roberts,* 484 F.3d at 1241-42 (New Mexico law; three-year federal statute of limitations for § 1983 claims does not run due to statutory tolling while an inmate grievance is pending, but uncompleted and to determine "how long [the inmate's] claim should be tolled, we must know how long his grievance remained viable under the institution's grievance procedures in effect at the time of [the] grievance;" equitable tolling requires an "extraordinary event beyond" Plaintiff's control).

amount of force necessary." *Doc. 9-2* at 1.  Even if use of pepper spray in this situation contravened the prison regulation, however, that violation would not afford Plaintiff any basis for relief.[6]

To prevail for a claim of excessive use of force under the Eighth Amendment, Plaintiff must show both the objective element of harmful conduct sufficient to establish a constitutional violation, and the subjective element of whether the force was applied in good faith to maintain discipline or maliciously and sadistically to cause harm.  *See, e.g., Smith v. Cochran,* 339 F.3d 1205, 1212 (10th Cir. 2003).  Plaintiff cannot meet either prong.

Here, the facts surrounding the need for the extraction and the manner in which it was carried out are either not in dispute, or are indisputable given the video record of the events.  Plaintiff was unruly and noncompliant before the extraction.  The Tenth Circuit, as do other courts, hold that although use of pepper spray could constitute excessive use of force, the use of pepper spray to maintain discipline does not violate the Eighth Amendment.[7]

---

[6] *See, e.g., Davis v. Scherer,* 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Porro v. Barnes,* 624 F.3d 1322, 1329 (10th Cir. 2010) ("violation of a prison regulation does not give rise to an Eighth Amendment violation absent evidence the prison official's conduct failed to conform to the constitutional standard"); *Hovater v. Robinson,* 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("a failure to adhere to administrative regulations does not equate to a constitutional violation").

[7] *Compare, e.g., Green v. Corr. Corp. of Amer.,* 401 F. App'x 371, 376 (10th Cir. 2010) ("Green admits that he was physically restraining another prisoner immediately before Medill used the pepper spray.  A prison official may use reasonable force to 'maintain or restore discipline.'") (quoting *Whitley v. Albers,* 475 U.S. 312, 320 (1986)), *Grissom v. Roberts,* 435 F. App'x 717, 718-20 (10th Cir. 2011) (affirming dismissal for "substantially the same reasons" as district court, which dismissed complaint at screening stage because inmate's own allegations established he was, among other things, disruptive disrespectful, and combative, and he did not allege "severe pain or lasting injury as a result of the pepper spray"), *Brown v. Williams,* No. 1:09–cv–00792–LJO–GBC (PC), 2011 WL 386852, at * 6 (E.D. Cal. Feb. 3, 2011) ("use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to . . . subdue recalcitrant

Notwithstanding his allegation of being "caked with mace," *Doc. 11* at 3, and a conclusory allegation of "irreparable damage," *id.* at 2, Plaintiff's evident lack of serious injury is dispositive of his medical care claim. He did not suffer, much less allege, severe pain or lasting injury as a result of the pepper spray. Indeed, he had been sprayed a few days before close to his face and simply washed his face with water and returned to the wall for the duration of the shakedown. On this occasion Plaintiff, by his own account and reflected by the videotape, was face down in his cell when the spray occurred, and only the officers were coughing in the aftermath.[8]

Wherefore,

**IT IS HEREBY RECOMMENDED** that this action not be dismissed for lack of exhaustion, but that summary judgment enter in favor of Defendants on the merits, and this action be dismissed with prejudice.

---

prisoners does not constitute cruel and inhuman punishment") (internal quotations and citation omitted), *and Thomas v. McNeil,* No. 3:04–cv–917–J–32JRK, 2009 WL 64616, at * 22 (M.D. Fla. Jan. 9, 2009) ("the use of chemical agents as a means of force against a recalcitrant prisoner who refuses to obey an order generally does not, in itself, violate the Eighth Amendment"), *with Iko v. Shreve,* 535 F. 3d 225, 231-33 (4th Cir. 2008) (videotape showed inmate in cell who attempted to comply repeatedly pepper sprayed, shackled and placed in spit mask; inmate not treated or decontaminated, remained in spit mask, placed face down on floor with officers kneeling on him to replace metal handcuffs with flex cuffs after he collapsed, and left face down in spit mask in cell without further attention and died of asphyxsia; held law clearly established and facts presented precluded grant of qualified immunity), *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (officer's discharge of pepper spray, indiscriminately and as practical joke states Eighth Amendment claim)*, and Norton v. City Of Marietta,* 432 F.3d 1145, 1152-54 (10th Cir. 2005) ("the facts relevant to both the objective and subjective elements of the excessive force test [regarding use of pepper spray] are hotly contested . . . Given the dearth of evidence in the record, the district court could not have reached these conclusions unless it chose to believe defendants over plaintiff.").

[8] *See, e.g., Campbell v. Singh,* 496 F. App'x 774, 77 (10th Cir. 2012) ("For a prison official's action to violate the Eighth Amendment, two requirements must be met. First, the inmate must be deprived of a serious need. . . . '[T]he deprivation alleged must be, objectively, sufficiently serious . . . [and] result in the denial of the minimal civilized measure of life's necessities.' . . . An official's failure to act is with deliberate indifference when that official is 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw[s] the inference.") (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994)).

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE